UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CLAYTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BIGELO, LLC, a Nevada limited liability company; and DOES I-IX, inclusive,<br><br>　　　　　　　　　　Defendants. | Case No.: 21cv285-GPC(BLM)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[Dkt. No. 5.]** |

Before the Court is Plaintiff's ex parte application for temporary restraining order ("TRO") filed on March 12, 2021. (Dkt. No. 5.) Defendant filed an opposition on March 17, 2021. (Dkt. No. 12.) Plaintiff filed a reply on March 22, 2021.[1] (Dkt. No. 14.) A hearing was held on March 23, 2021. (Dkt. No. 16.) Based on the parties' briefs, the supporting documentation, the applicable law, and the arguments at the hearing, the Court DENIES Plaintiff's ex parte application for temporary restraining order.

/ / /

/ / /

---

[1] On March 23, 2021 Defendant filed a motion to strike reply as not authorized by the Court and raising additional arguments not raised in the motion. (Dkt. No. 15.) While Plaintiff did not seek leave to file a reply, the Court considered it. Thus, the Court DENIES Defendant's motion to strike.

**Background**

The case was removed from state court on February 16, 2021. (Dkt. No. 1.) Plaintiff Jonathan Clay ("Plaintiff" or "Clay") filed a complaint seeking declaratory and injunctive relief against Defendant Bigelo, LLC ("Defendant") for breach of covenant for starting to build a two-story residence in the La Jolla Foothills Community. (*Id.*) Plaintiff is the owner and resident of a home located at 5456 Castle Hills Drive in San Diego, CA and purchased his property around August 21, 2019. (Dkt. No. 5-1, Clay Decl. ¶ 1; Dkt. No. 12-1, Barry Decl., Ex. A.) Defendant is the owner of real property located at 1369 Vue De Ville Ct., San Diego, CA 92109 and purchased it on July 10, 2019. (Dkt. No. 5-1, Clay Decl. ¶ 1; Dkt. No. 12-1 Barry Decl. ¶ 3.) Both properties are located within the La Jolla Foothills Community ("Community") and subject to its Declaration of Restrictions ("Restrictions"), which was recorded on September 13, 1962 as Document No. 1962-158238 with the County of San Diego. (Dkt. No. 5-1, Clay Decl. ¶ 2; *id.*, Ex. B.) Plaintiff asserts his property is located about 400 feet northeast of Defendant's property. (Dkt. No. 5-1, Clay Decl. ¶ 1.) Defendant claims Plaintiff's property sits on a bluff about 36 feet above Defendant's property. (Dkt. No. 12-1, Barry Decl., Ex. B-4 at 15.[2])

Paragraph 4 of the Restrictions, the provision in dispute, provides,

> (4) No buildings shall be erected on any of said lots until the complete plans and specifications for such building and the location thereof, together with a landscape plan, and a grading plan, if a grading plan is requested, have been approved by a Committee appointed by said Owner; provided however, that in the event said Committee fails to approve or disapprove such design and location, landscaping plan and grading plan, if such grading plan is requested, within thirty (30) days after the submission of said plans to them or, there is no such Committee appointed or elected, then such approval will not be required provided that any dwelling and out-building to be erected, and the grading and landscaping conform to and are in harmony with similar structures in said tract; provided further, that said plans and specifications

---

[2] Page numbers are based on the CM/ECF pagination.

> shall be drawn by and the supervision of construction thereunder, after Committee approval, shall be made by a licensed architect; provided further, that such Committee may approve the services of a competent designer in lieu of the services of a licensed architect, if such designer's request for consideration be submitted in writing to such Committee prior to the drafting of plans and specifications; provided, further, that no structure or building of more than one story in height shall be erected without the prior approval of said Committee.

(Dkt. No. 5-1, Clay Decl., Ex. B.)  Both parties agree that a "Committee" was never established or does not currently exist as contemplated under the Restrictions.  (Dkt. No. 5 at 7; Dkt. No. 12-1, Barry Decl. ¶ 19; *see also* Dkt. No. 12-1, Ackroyd Decl. ¶ 6.)

Around November 27, 2019, Defendant submitted a permit application with the City of San Diego to construct a two-story family residence on the property which was approved.  (Dkt. No. 5-2, Goulet Decl. ¶ 6; *id.*, Ex. C.)  Despite letters sent by homeowners of the Community to Defendant, it has begun construction of a two-story residence and failed to respond to efforts to resolve the issue.  (Dkt. No. 5-1, Clay Decl. ¶¶ 6, 7.)

On July 16, 2020, Plaintiff's counsel sent a letter to Defendant requesting that Defendant cease construction of the two-story structure and comply with the Restrictions.  (Dkt. No. 5-2, Goulet Decl. ¶ 8; *id.*, Ex. D.)  On August 21, 2020, Plaintiff's counsel attempted to record a Notice of Claim of Breach of Declaration of Restriction with the San Diego Recorder's Office pursuant to the dispute resolution procedures outlined in the Restrictions but the San Diego Recorder's office advised it will not record the Notice of Claim.  (*Id.* ¶ 9; *id.*, Ex. E.)  Then Plaintiff's counsel proceeded to comply with the dispute resolution procedures provided by California Civil Code section 5930.  (*Id.* ¶ 9.)

On October 1, 2020, Defendant's counsel informed Plaintiff that Defendant will not cease construction.  (*Id.* ¶ 10.)  On November 10, 2020, Plaintiff's counsel sent a Request for Resolution letter to defense counsel requesting that Defendant agree to mediation.  (*Id.* ¶ 11.)  The letter was also a pre-condition to filing an action for breach of covenants, conditions and restrictions in the superior court.  (*Id.*; *id.*, Ex. F.)  Despite the

pendency of this action, Defendant continues to construct a two-story residence and laid the foundation in February 2021. (*Id.* ¶ 13.) By way of this application, Plaintiff seeks a temporary restraining order prohibiting Defendant from proceeding with the construction of the two-story residence arguing that the Declaration of Restrictions bars two-story residences in the La Jolla Foothills Community. Defendant opposes.

## Discussion

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs. *See DISH Network Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).

### A. Likelihood of Success on the Merits

Plaintiff argues that the Restrictions runs with the 37 lots of the La Jolla Foothills Community, including Defendant's property, and even though there is no Committee to oversee approvals, the Restrictions must be complied with by the owners and subsequent owners. Even though there are two-story homes in the community that breach the covenant, the Restrictions run with the land and Plaintiff has the right to enforce the provisions of the Restrictions. Defendant disagrees with Plaintiff's interpretation of the Restrictions maintaining that Plaintiff cherry picks sections of the Restrictions to support

his argument. It contends that read as a whole, the Restrictions does not include an express prohibition on constructing two story homes in the community and does not provide property owners with the unfettered right to bar construction of two-story homes in order to preserve a homeowner's view. In fact, among the 37 homes in the community, there are 9 two-story homes, including a one-story home adjacent to Plaintiff's residence. (Dkt. No. 12-1, Barry Decl., Ex. F-1.) Moreover, per the Restrictions, which incorporates all ordinances regulations and resolution of the City of San Diego pertaining to construction of dwelling units, the San Diego Development Services Department reviewed Defendant's plans and drawings and then issued a permit for construction. (Dkt. No. 5-2, Goulet Decl., Ex. C.) Finally, Defendant argues that the Restrictions does not expressly protect the views in the community.

The complaint alleges one count for breach of covenant pursuant to California Civil Code section 1460 which provides, "[c]ertain covenants, contained in grants of estates in real property, are appurtenant to such estates, and pass with them, so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them. Such covenants are said to run with the land." Cal. Civ. Code § 1460. (Dkt. No. 1, Compl. ¶¶ 17-20.)

"The same rules that apply to interpretation of contracts apply to the interpretation of CC & R's." *Fourth La Costa Condominium Owners Assn. v. Seith*, 159 Cal. App. 4th 563, 575 (2008) (quoting *Chee v. Amanda Goldt Prop. Mgmt*., 143 Cal. App. 4th 1360, 1377 (2006)). Under contract interpretation, a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Templeton Dev. Corp. v. Superior Ct*., 144 Cal. App. 4th 1073, 1085 (2006) (quoting Cal. Civ. Code § 1636). "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." *Id.* at 1081; *see* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). Further, the "whole of a contract is to be taken together, so as to give effect to every part,

if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

The general rule is that "restrictive covenants are construed strictly against the person seeking to enforce them, and any doubt will be resolved in favor of the free use of land." *Chee,* 143 Cal. App. 4th at 1377; *Smith v. North*, 244 Cal. App. 2d 245, 248 (1966) (where a restrictive covenant is "subject to more than one interpretation, that construction consonant with the unencumbered use of the property will be adopted," and "any doubt therein is resolved against enforcement of the restriction"].). The Court must assess the "intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation. The intention of the parties is to be determined from the document as a whole, and if possible still give effect to every part." *Zabrucky v. McAdams*, 129 Cal. App. 4th 618, 622 (2005) (internal quotations and citations omitted). Further, "[r]estrictions on the use of land will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention should be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, should be to effectuate the legitimate desires of the covenanting parties." *Hannula v. Hacienda Homes*, 34 Cal. 2d 442, 444-45 (1949).

Here, Plaintiff relies solely on the last sentence in paragraph 4 stating "[n]o structure or building of more than one story in height shall be erected without the prior approval of said Committee" to support his argument that the Restrictions clearly limit homes to a single-story residence in the Community. (Dkt. No. 5 at 6-7.) He further claims that even though no Committee exists to oversee the approvals, the Restrictions run with the land and must be followed by owners and subsequent owners absent a Committee or association to enforce them. (*Id.*) Defendant responds that since no Committee was ever created, the Restrictions only requires that a structure that is erected be in conformity and in harmony with similar structures in the Community. (Dkt. No. 12 at 6.) It contends its structure conforms with other structure in the Community.

The Court agrees with Defendant that Plaintiff fails to give effect to the entirety of paragraph 4 which provides guidance on how to procced when a Committee is not appointed or elected. According to paragraph 4 of the Restrictions,

> (4) No buildings shall be erected on any of said lots until the complete plans and specifications for such building and the location thereof, together with a landscape plan, and a grading plan, if a grading plan is requested, have been approved by a Committee appointed by said Owner; provided however, that in the event said Committee fails to approve or disapprove such design and location, landscaping plan and grading plan, if such grading plan is requested, within thirty (30) days after the submission of said plans to them or, **there is no such Committee appointed or elected, then such approval will not be required provided that any dwelling and out-building to be erected, and the grading and landscaping conform to and are in harmony with similar structures in said tract**; provided further, that said plans and specifications shall be drawn by and the supervision of construction thereunder, after Committee approval, shall be made by a licensed architect; provided further, that such Committee may approve the services of a competent designer in lieu of the services of a licensed architect, if such designer's request for consideration be submitted in writing to such Committee prior to the drafting of plans and specifications; provided, further, **that no structure or building of more than one story in height shall be erected without the prior approval of said Committee.**

(Dkt. No. 5-1, Clay Decl., Ex. B.)

As an initial matter, contrary to Plaintiff's argument, a plain reading of the last sentence of paragraph 4 does not strictly limit homes to a single story in the Community. It merely states that a structure more than one story may not be built without prior approval of the Committee. Therefore, a two-story structure may be built if there were Committee approval and no absolute bar exists to build a two-story home in the Community. Furthermore, the Restrictions contemplates a situation in the event a Committee is never appointed or elected. Paragraph 4 states that if there is no Committee, then approval is not required as long as the structure, the grading and landscaping conform "to and are in harmony with similar structures in said tract." (*See id.*) Therefore, the issue becomes whether Defendant's planned structure is in harmony

with similar structures in the tract which Plaintiff does not appear to challenge in the Complaint or the motion for TRO but did challenge at the hearing.

At the hearing, Plaintiff argued that the provision addressing when there is no Committee appointed or elected is an exception that applies to the provisions before it and not to the provisions after it.  Therefore, even without prior Committee approval, Plaintiff claims that no two-story residence may be erected.  The Court disagrees.  Taking into consideration the entirety of paragraph 4, which constitutes one long run-on sentence, and giving effect to all the provisions, and that "restrictive covenants are construed strictly against the person seeking to enforce them," *Chee*, 143 Cal. App. 4th at 1377, the Court concludes that the Restrictions does not absolutely limit the erection of buildings or structures to a single-story and when no Committee has been appointed or elected, Committee approval is not necessary as long as the structure conforms and is in harmony with other similar structures in the community.  Accordingly, Plaintiff's claim that the Restrictions strictly bars two-story residences in the Community fails.

To the extent Plaintiff relies on a TRO granted to homeowners in the Community by the San Diego Superior Court on August 15, 1995 in *Barton v. Mabile*, the TRO order, itself, does not support Plaintiff's position that the case is precedent upholding the Restrictions' prohibition against two-story homes.  (Dkt. No. 5, Ex. A at 14-15.)  Plaintiff provides his rendition of the facts of the *Barton* case, (Dkt. No. 5 at 10-11), but he fails to provide any documentation to support these facts.  Moreover, the TRO filed with the superior court does not provide any details as to the factual bases of the parties' argument.  Instead, the TRO enjoined the defendants from constructing or installing a structure, including a roof, of more than one story in height because the structure violated the San Diego Municipal Code.  (*Id.* at 14-16.)  The TRO was not based on a violation of the Declaration of Restrictions.  (*Id.*)  Therefore, the *Barton* case does not support Plaintiff's argument.

Plaintiff also claims a constitutional right to privacy and cites to *Tom v. City and Cnty. of San Francisco*, 120 Cal. App. 4th 674, 679-80 (2004); however, that case dealt

with a city ordinance and an "'autonomy privacy' interest in choosing the persons with whom a person will reside, and in excluding others from one's private residence." *Id.* at 680. The *Tom* case does not address right to privacy of a homeowner from a neighbor's construction and does not support Plaintiff's position.

On the other hand, Defendant contends that Plaintiff has no right to a view. "California landowners do not have a right of access to air, light and view over adjoining property." *Mira Mar Mobile Comty. v. City of Oceanside*, 119 Cal. App. 4th 477, 492 (2004) (citing *Wolford v. Thomas*, 190 Cal. App. 3d 347, 358 (1987)). The court of appeals in *Taliaferro* concluded that a landowner cannot claim damages when an adjoining landowner "does something strictly on his own property which shuts off the air and light" to the first landowner. *Taliaferro v. Salyer*, 162 Cal. App. 2d 685, 689 (1958). In order to have a right to a cause of action seeking the right for light or air, there must have been an express grant or covenant for light or air. *Katcher v. Home S. & L. Assn.*, 245 Cal. App. 2d 425, 429 (1966). In *Katcher*, four homeowners sued the owner and developer of a large parcel of land in the San Fernando Valley alleging their vested property rights in the panoramic view, privacy, and "'extraordinary light and air'" were violated by the defendant's construction of terraced homes in violation of the zoning plan. *Id.* at 427. The court of appeal affirmed the trial court's grant of summary judgment, holding that "[i]t has long been established in this state that a landowner has no easement over adjoining land for light and air in the absence of an express grant or covenant." *Id.* at 429.

In reply, Plaintiff cites to *Mock v. Shulman*, 226 Cal. App. 2d 263, 265-66 (1964), where the court of appeal affirmed the trial court's finding that the defendants, whose cypress trees were taller than six feet, breached the restrictions stating "[n]o fence, wall or hedge over six feet in height shall be erected or grown or permitted to exist on any lot or lots in said tract within fifteen feet of any boundary line of any lot; provided, however, that the restrictions set forth in this paragraph 4 may be waived or modified as to any lot or lots in said tract by a written instrument duly executed by the Architectural

Supervising Committee." *Id.* The trial court found that there was no waiver of the restriction. *Id.* at 266. It stated that "that the trees interfered with the [plaintiffs'] light and air, and their comfort, use and enjoyment of their property and constituted a continuing nuisance." *Id.* The court also noted the general rule that a property right, such as light and air, can be created by an instrument. *Id.* at 269. In *Mock,* because the restrictions limited the height of any fence, wall or hedge to six feet, the court found that it protected the homeowners' right to light and air.

In this case, the ban on any structure more than one story without prior approval of the Committee cannot be interpreted as an express covenant for light, view or air. Given that no Committee was appointed or elected, any erection of a structure must only "conform to and [be] in harmony with similar structures in said tract." (Dkt. No. 5-1, Clay Decl., Ex. B.) Therefore, Plaintiff has not demonstrated that there has been an express grant or covenant for a view in the Restrictions.

Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits that Defendant has violated the Restrictions.[3]

## B.     Likelihood of Irreparable Harm

Plaintiff argues that monetary damages would not provide complete relief because money cannot restore the "coveted unobstructed view to Mr. Clay." (Dkt. No. 5-2, Goulet Decl. ¶ 13). Plaintiff asserts that a two-story residence on Defendant's property would greatly obstruct his and several neighboring properties' views of the Pacific Ocean. (Dkt. No. 5-1, Clay Decl. ¶ 8.) In addition, the two-story residence would also encroach on his privacy because he added new glass windows and doors to enjoy his view from the master bedroom and bathroom and kitchen as well as a hot tub in the outdoor space. (*Id.* ¶ 11.) The two-story structure would provide a "direct line of sight"

---

[3] Because the Court concludes that the terms of the Restrictions does not bar the construction of a two-story residence, the Court need not address Defendant's alternative argument that the doctrine of changed conditions applies. (Dkt. No. 12 at 14.)

into Plaintiff' master bedroom, bathroom and hot tub area.  (*Id.*)  Defendant argues that Plaintiff will not suffer any harm because its construction conforms to and is in harmony with the surrounding property in the Community and will not block Plaintiff's view as its property is lower in elevation than Plaintiff's residence.  Defendant claims it will suffer significant costs to change architectural plans and its inability to enjoy a two-story home that already characterizes the neighborhood.

As discussed above, a landowner has no right of access to a view absent an express covenant, and Plaintiff has not demonstrated he has right to privacy; therefore, Plaintiff's claims of irreparable harm due to loss of his view of the ocean and privacy rights are not persuasive.  Even if they did constitute irreparable harm, there are factual issues in dispute as to the extent of the alleged loss of Plaintiff's views and privacy rights.  (*Compare* Dkt No. 5-1, Clay Decl. 8, 11 *with* Dkt. No. 12 at 8-9; Dkt. No. 12-1, Barry Decl., Exs. B-1 to B-4.)  Accordingly, Plaintiff has not demonstrated irreparable harm.

Because Plaintiff has failed to demonstrate likelihood of success on the merits and irreparable harm, the Court declines to address the remaining *Winter* factors.  *See RasterOps v. Radius, Inc.*, 861 F. Supp. 1479, 1498 (N.D. Cal. 1994) ("Because the court finds that [the plaintiff] has failed to establish both of the crucial factors, and therefore cannot grant the requested injunction, the court declines to make findings on the third and fourth factors."); *Klamath–Siskiyou Wildlands Center v. Heywood*, Case No. 2:09–cv–2252–JAM–GGH 2009 WL 10692050, at *4 (E.D. Cal. Sept. 24, 2009) ("Because Plaintiffs have failed to demonstrate the first element in the four factor test for a preliminary injunction set forth by the Supreme Court in *Winter*[ ], this Court declines to reach the other three factors.").  Accordingly, the Court DENIES Plaintiff's ex parte motion for restraining order.

/ / /

/ / /

/ / /

/ / /

**Conclusion**

Based on the above, the Court DENIES Plaintiff's ex parte motion for temporary restraining order.

IT IS SO ORDERED.

Dated: March 24, 2021

Hon. Gonzalo P. Curiel
United States District Judge